UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC. and CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ACT LENDING CORPORATION d/b/a AMERICAN CAPITAL MORTGAGE SERVICES, AMERICAN CAPITAL TRUST, and NELSON HAWS,<br><br>　　　　　　Defendants. | Case No. 07-CV-10318 (JGK) |

**PLAINTIFFS INQUEST MEMORANDUM AND
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff DLJ Mortgage Capital, Inc. (**"DLJMC"**) and Credit Suisse First Boston Mortgage Capital, LLC (**"CSFBMC"**) respectfully submit this Inquest Memorandum, the Affidavit of Bruce S. Kaiserman (the **"Kaiserman Affidavit"**) and the exhibits annexed thereto, and the Declaration of Robert A. Pinel, Esq. (the **"Pinel Declaration"**), in compliance with Magistrate Judge Theodore H. Katz's April 16, 2008 Scheduling Order, issued in connection with the Order entered by District Judge John F. Keenan, granting a default judgment in favor of DLJMC and against Defendants ACT Lending Corporation (**"ACT Lending"**) and American Capital Trust (**"ACT Capital"**)(collectively referred to as **"Defendants"**).

## PROPOSED FINDINGS OF FACT

### A. The Parties

1. Plaintiff DLJMC is a corporation organized and existing under the laws of the state of Delaware. DLJMC is a purchaser of mortgage loans and maintains its principal place of business in New York, New York.[1] Amended Complaint at ¶8.

3. Plaintiff CSFBMC is a Delaware Limited Liability Company qualified to do business in the State of New York. Its principal place of business is at 11 Madison Avenue, New York City, New York County, State of New York. Amended Complaint at ¶9.

4. Defendant ACT Lending is a Florida corporation doing business in the State of New York. Its principal place of business is 481 Sawgrass Corporate Parkway, Sunrise, Florida 33325. Amended Complaint at ¶10.

5. Defendant ACT Capital is a Florida company doing business in the State of New York. Its principal place of business is 8330 State Road 84, Davie, Florida 33324. Amended Complaint at ¶11.

### The Loan Purchase Agreements

### A. CSFBMC – ACT Lending Agreement

6. On or about March 24, 2005, CSFBMC and Defendant ACT Lending entered into a Master Repurchase Agreement (the "Original MRA"). (A copy of the Original MRA is attached to the Amended Complaint as Exhibit A.) There have been eight amendments to the Original MRA, most recently on August 30, 2006. (Copies of the Amendments are attached to the Amended Complaint as Exhibit B.) (The Original

---

[1] Because Defendants' default has been established, Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true. Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

273607 v1                                    2

MRA and its amendments shall collectively be referred to as the "MRA") Amended Complaint at ¶13, Exhibits A and B.

7. Under the terms of the MRA, Plaintiff CSFBMC agreed to purchase certain mortgage loans from Defendant ACT Lending. Defendant ACT Lending agreed to repurchase these mortgage loans from Plaintiff CSFBMC "at a date certain or on demand." MRA at §4(a). Amended Complaint at ¶14, Exhibit C.

8. Specifically, the MRA provides: "Seller shall repurchase the related Purchase Money Mortgage Loans from Buyer on each related Repurchase Date. Such obligation to repurchase exists without regard to any prior or intervening liquidation or foreclosure with respect to any Purchased Mortgage Loan.... " MRA at §4(a). Kaiserman Affidavit at ¶8.

9. Failure to repurchase the loans creates an act of default. An "Event of Default" is defined in several ways under the MRA, including the "[f]ailure of Seller to (i) make any payment of ... [a] Repurchase Price or any other sum which has become due ... whether by acceleration or otherwise, under the terms of this Agreement ...." MRA at §15(a)(i). Kaiserman Affidavit at ¶9.

10. In addition to the standard remedies for breach of its agreements for losses under the MRA, see MRA at §16(f)(ii) and (iii), ACT Lending shall also be liable to CSFBMC for "all reasonable legal or other expenses... including, without limitation, the reasonable fees and expenses of counsel ... incurred in connection with or as result of an Event of Default...." MRA at §16(f)(i). Kaiserman Affidavit at ¶10.

11. The MRA also provides for a post-default rate of interest on loans that Defendant ACT Lending fails to repurchase as required. MRA at §16(g). The "Post

Default Rate" is the "Pricing Rate" plus 3%. MRA at §2. The "Pricing Rate" means LIBOR plus 2.00%. See Amended Complaint, Exhibit B, Amendment No. 7 to MRA, dated May 30, 2006 at §2.1(b) (Defining - "LIBOR" and "PRICING RATE"). Thus, upon the failure to repurchase loans, Defendant ACT Lending is liable for a post-default rate of interest of LIBOR plus 5.00%. Kaiserman Affidavit at ¶11.

12. Defendant ACT Lending failed and refused to meet its obligations under the MRA by failing to repurchase certain loans by failing to tender the Repurchase Price by the Repurchase Date of February 1, 2008. These loans total $743,862.22. Kaiserman Affidavit, ¶12, Exhibit A.

13. Interest on these loans from the date of default – February 1, 2008 – through May 31, 2008 totals $95,486.76. Kaiserman Affidavit, ¶13, Exhibit B.

14. As a result, as of May 31, 2008, Defendant ACT Lending owes Plaintiff CSFBMC an amount totaling $839,348.98 for its failure to repurchase the loans as required by the MRA. Kaiserman Affidavit at ¶14.

**B.   DLJMC – ACT Lending/ACT Capital Agreement**

15. On or about January 1, 2002, Plaintiff DLJMC entered into a Purchase, Warranties and Interim Servicing Agreement with Defendant ACT Capital (the **"Original Purchase Agreement"**). Amended Complaint, ¶19, Exhibit D.

16. On or about March 1, 2005, both Defendants ACT Lending and ACT Capital entered into an Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement" (the **"Amended Purchase Agreement"**). (The Original Purchase Agreement and the Amended Purchase Agreement shall be collectively referred to as the **"Purchase Agreement"**). Amended Complaint, ¶19, Exhibit E.)

17. Under the terms of the Amended Purchase Agreement, Defendant ACT Lending acknowledged the existence of Original Purchase Agreement and by executing the Amended Purchase Agreement became – along with ACT Capital – a responsible party under the Purchase Agreement. Kaiserman Affidavit at ¶17.

18. There is a synchronicity of identify between the Defendants with reference to the Purchase Agreement. Act Capital signed the Amended Purchase Agreement, even though ACT Lending is identified as the "Seller". Defendant ACT Lending subsequently acknowledged its agreement and obligations under the Purchase Agreement by executing a July 1, 2005 letter agreement (the "Letter Agreement"), amending the Original and Amended Purchase Agreements. Kaiserman Affidavit at ¶18.

19. Under the terms of the Purchase Agreement, Plaintiff DLJMC agreed to purchase certain mortgage loans from Defendants; Defendants would originate and sell mortgage loans to DLJMC. Defendants sold millions in loans to DLJMC. Additionally, in connection with these loans, Defendants reached out to DLJMC by e-mail, facsimile, and telephone. Further, as a loan servicer, Defendants forwarded all funds received by it on account of DLJMC to DLJMC in New York. Kaiserman Affidavit at ¶19.

20. Pursuant to Section 3.05 of the Purchase Agreement, Defendants agreed to repurchase from DLJMC certain mortgage loans as to which there occurred payment defaults after the Closing Date (as defined in the Purchase Agreement) for such mortgage loans (the "Early Payment Default Loans"). Section 3.05 of the Purchase Agreement specifically provides as follows:

> If (a) a Mortgagor is thirty (30) days or more
> delinquent with respect to any of the first three (3)

> Monthly Payments due to [DLJMC] on the related Mortgage Loan immediately following the applicable Closing Date . . . [Defendants], at [DLJMC's] option, shall promptly repurchase such Mortgage Loan from [DLJMC] within five (5) Business Days' of receipt of written notice from [DLJMC], in accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price.

Kaiserman Affidavit at ¶20.

21.  Thus, the Purchase Agreement expressly and unambiguously confers upon DLJMC the right to cause Defendants to repurchase, and, imposes on Defendants the obligation to repurchase, any Early Payment Default Loans as to which DLJMC requests repurchase. Kaiserman Affidavit at ¶21.

22.  Certain of the mortgage loans that DLJMC purchased from Defendants pursuant to the Purchase Agreement were thirty days or more delinquent within three months after the Closing Date. Kaiserman Affidavit at ¶22.

23.  Accordingly DLJMC requested that Defendants repurchase these Early Payment Default Loans pursuant to Section 3.05 of the Purchase Agreement. Kaiserman Affidavit at ¶23, Exhibit D.

24.  Under the Purchase Agreement, Defendants also agreed to provide "Purchase Price Protection" ("PPP") (commonly referred to as "Premium Recapture") to Plaintiff DLJMC if the purchased mortgage loans paid-off in full within a certain time after Plaintiff DLJMC purchased the mortgage loans from Defendants ACT Capital and ACT Lending. Section 3.06 of the Purchase Agreement. Kaiserman Affidavit at ¶ 24.

25.  DLJ gave Defendants notice that they must pay PPP for certain of the mortgage loans. Kaiserman Affidavit at ¶24, Exhibit E.

25.  To date, Defendants have also refused and failed to repurchase the Early Payment Default Loans from DLJMC notwithstanding Defendants' express and unambiguous obligation to do so pursuant to the terms of the Purchase Agreement. Kaiserman Affidavit at ¶25.

26.  To date, Defendants have also refused and failed to pay PPP to DLJMC notwithstanding Defendants' express and unambiguous obligation to do so pursuant to the terms of the Purchase Agreement.   Kaiserman Affidavit at ¶26.

27.  The total amount due from Defendants to DLJMC under the Purchase Agreement as of May 31, 2008 is $40,890,837.35 (a) the sum of $40,679,565.63 as the amount owed for Defendants' failure to repurchase the Early Payment Default Loans and its failure to forward loan pay-offs as of May 12, 2008; (b) interest from May 12, 2008 to May 31, 2008 of $149,686.56; and (c) $61,585.16 in PPP.  Kaiserman Affidavit at ¶27.

### D.  Indemnification Obligations Under the Purchase Agreement

28.  Pursuant to Section 8.01 of the Purchase Agreement, Defendants agreed to indemnify DLJMC for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that DLJMC may sustain in any way related to Defendants' failure to observe and perform its duties, obligations, and covenants in strict compliance with the terms of the Purchase Agreement. *See* Purchase Agreement, Section 8.01.

29.  Defendants' indemnification obligation expressly includes the legal fees and related costs and any other costs, fees and expenses that DLJMC may sustain in connection with Defendants' failure to observe and perform its obligations to repurchase

loans and comply with its other obligations under the Agreement, including, but not limited to, the attorneys' fees and other expenses incurred in this action. See Purchase Agreement, Section 8.01.

30. Under the MRA, Defendant ACT Lending agreed to indemnify CSFBMC for attorney's fees and costs. The MRA provides that Seller shall be liable to Buyer for "all reasonable legal or other expenses... including, without limitation, the reasonable fees and expenses of counsel ... incurred in connection with or as result of an Event of Default...." MRA at §16(f)(i).

## PROPOSED CONCLUSIONS OF LAW

### A.  This Court Has Subject Matter Jurisdiction

31. Plaintiffs and Defendants are fully diverse; Plaintiff DLJMC is a Delaware corporation with its principal place of business in New York. Similarly, Plaintiff CSFBMC is a Delaware Limited Liability Corporation with its principal place of business in New York. Defendant ACT Lending is a Florida corporation with its primary place of business in Florida. Defendant ACT Capital is a Florida company with its primary place of business in Florida. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### B.  This Court Has Personal Jurisdiction Over Defendants Because They Transacted Business in New York Pursuant to the Purchase Agreement

32. The exercise of personal jurisdiction over Defendants in New York is proper because Defendants transacted considerable business in New York under the Purchase Agreement and the MRA. DLJMC's claims against Defendants for breach of the Purchase Agreement have a substantial nexus to such business transactions.

Similarly, CSFBMC's claims against Defendant ACT Lending for breach of the MRA have as substantial nexus to the business transactions.

33. New York's long arm statute provides that "a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent. . . transacts any business within the state or contracts anywhere to supply goods or services in the state." New York Civil Practice Law and Rules ("CPLR") § 302(a)(1). In order to determine jurisdiction under CPLR § 302(a)(1) "a court must decide (1) whether the defendant 'transacts any business in New York' and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, No. 04-3924, 2007 WL 1815511, at *6 (2d Cir. June 26, 2007).

1. **Defendants Have Transacted Business in New York**

34. To determine whether a defendant has purposefully transacted business in New York, the courts will look to "the totality of the defendant's activities within the forum." Id. (internal citations omitted). The Second Circuit has enumerated a variety of factors to guide this determination, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [defendants] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted). In applying the above-listed factors, "no one factor is

dispositive" and the court must look at "the totality of circumstances" concerning the defendant's interactions with, and activities within, the state. Id. Each of these factors is satisfied in this case.

35. First, Defendants clearly had an on-going contractual relationship with DLJMC, spanning a period of over 4 years, during which time Defendants sold loans to DLJMC worth millions of dollars. See Kaiserman Affidavit at ¶¶18-19. In addition to these transactions, Defendants exchanged emails, telephone calls and facsimiles with DLJMC, and thus projected itself into on-going and substantial commerce in New York. See Treeline Investment Partners, LP v. Koren, No. 07 Civ. 1964 (PLC), 2007 WL 1933860, at *3 (S.D.N.Y. July 3, 2007) (stating "while telephone contacts between non-domiciliary defendants and a New York party are insufficient by themselves to confer jurisdiction under CPLR 302(a)(1),... a non-domiciliary defendant will be subject to jurisdiction if the defendant uses these telephone communications to deliberately 'project' himself into business transactions occurring within the state.") (internal citations omitted); Chong v. Healthtronics, Inc., No. CV-06-l287 (SJF)(MLO), 2007 WL 1836831, at *9 (E.D.N.Y. June 20, 2007) (stating that defendant's use of telephone, facsimiles or emails to communicate with plaintiff in New York may be sufficient to establish that the defendant transacted business in New York if the defendant intended "to project itself into ongoing New York commerce") (citing Kulas v. Adachi, No. 96 CIV. 6674Qv1BM), 1997 WL 256957, at *7 (S.D.N.Y. May 16, 1997)).

36. Similarly, Defendant ACT Lending had an on-going relationship with CSFBMC. ACT Lending borrowed funds from CSFBMC using mortgage loans as collateral. Repayment was to be made by repurchase of the mortgage loans from

CSFBMC on a certain date and for a certain amount of money. Additionally, the MRA contained a New York choice of law clause. MRA at ¶51.

37. The second factor used to determine whether Defendants transacted business in New York is satisfied because the Purchase Agreement and the MRA were at least partially negotiated and executed in New York and Defendants directed meaningful communications to DLJMC in New York. The Second Circuit has stated that "we question whether in an age of email and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence." Agency Rent A Car System, 98 F.3d at 30; see Sea Tow Services International v. Pontin. 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007); see New York Islanders Hockey Club. LEP v. Comerica Bank-Texas, 71 F. Supp. 2d 108, 114 (E.D.N.Y. 1999). In Treeline, this Court held that defendant was engaged in purposeful activity in New York by negotiating sales contracts with New York plaintiffs via telephone, email and fax even though the actual contracts were not executed in New York. Treeline Investment Partners, 2007 WE 1933860, at *3. As in Treeline, Defendants conducted email, telephone and fax communications regarding the negotiation of and performance under the Purchase Agreement. These communications were directed to DLJMC and CSFBMC in New York, and are sufficient to bolster the point that Defendants transacted business in New York.

38. The third factor in the "transacting business" test is satisfied because both the Purchase Agreement and the MRA contains a New York choice of law provision. "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law." Sunward

Elec., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004) (emphasis added). Here, section 12.04 of the Purchase Agreement, entitled "Governing Law" states:

> [t]his Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law provisions, except to the extent preempted by Federal Law. The obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

Purchase Agreement, § 12.04 (emphasis added). Therefore, Defendants invoked the benefits of New York by agreeing that New York law would govern the parties' contractual relationship. See MRA §24.

39. The fourth factor in the "transacting business" test is satisfied because the Purchase Agreement requires Defendants to send notices and payments into New York. Section 12.05 of the Purchase Agreement, entitled "Notices," requires Defendants to direct all notices and communications to DLJMC in New York. The same is true for the MRA. MRA §20.

40. Accordingly, application of each of the relevant factors demonstrates that Defendants transacted business in New York.

41. In view of the application of the above-described factors, therefore, the Court should conclude that Defendants transacted business in New York, and that the requirements of the first prong of New York's long-arm statute have been satisfied.

## 2.   This Action Arises From Transactions With DLJMC and CSFBMC in New York

42. The second prong of New York's long-arm statute is satisfied because CSFBMC's and DLJMC's claims against Defendants arise out of Defendants' business transactions within New York. To satisfy the second prong of New York's long-arm

jurisdiction test, the plaintiff must "show that the causes of action 'arise out of' the defendant's transactions within the state." New York Islanders, 71 F. Supp. 2d at 114 (citing Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998)). "[A] claim 'arises from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." Treeline Investment Partners. 2007 WL 1933860, at *3; Best Van Lines, 2007 WL 1815511, at *6.

43. Defendants transacted business within the State of New York through its sale of mortgage loans to DLJMC under the Purchase Agreement and to CSFBMC under the MRA. DLJMC's and CSFBMC's breach of contract and other claims are a direct result of these transactions and Defendants' failure to perform their obligations under the Purchase Agreement and the MRA. Thus, there is a clear nexus between CSFBMC's and DLJMC's causes of action and Defendants' business transactions in New York.

44. Accordingly, for the foregoing reasons, this Court has personal jurisdiction over Defendants.[2]

## C. DLJMC's and CSFBMC's Claims For Breach of Contract[3]

45. The general rule for measuring damages for a breach of contract is "the amount necessary to put the plaintiff in the same economic position [it] would have been

---

[2] The requirements of due process under the Fourteenth Amendment of the United States Constitution are also satisfied in the instant action as a result of Defendants' extensive and purposeful transactions with DLJMC and CSFBMC in New York.

[3] Since there is a valid contract governing the subject matter of the parties' dispute, the Court need not address DLJMC's cause of action for unjust enrichment. See ESI, Inc. v. Coastal Power Prod. Co., 995 F.Supp. 419, 436 (S.D.N.Y. 1998) (citing In re Chateaugay Corn., 10 F.3d 944, 958 (2d Cir. 1993) ("unjust enrichment is a quasi-contractual doctrine that applies only in the absence of a valid and enforceable contract").

273607 v1                                    13

in had the defendant fulfilled [its] contract." Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 495 (2d Cir. 1995).

46. Further, a party prevailing in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred until the date of final judgment. See CPLR § 5001 and 5002; U.S. Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991). The statutory rate for such prejudgment interest is nine percent per annum. See CPLR § 5004; Chaman LAL Setia Exp., Ltd. v. Sawhney, No. 00 Civ. 2838, 2003 WL 21649652, at *4 (S.D.N.Y. May 28, 2003).

47. Based on the foregoing, and as set forth in the Kaiserman Affidavit, Defendants are liable in the amounts as set forth previously. *Supra* at ¶¶12-14, 27. Defendant ACT Lending is liable to Plaintiff CSFBMC in an amount of $839,348.98: loans totaling $743,862.22 and pre-judgment interest of $95,486.76. Kaiserman Affidavit, ¶¶12-14. Defendants are jointly and severally liable to Plaintiff DLJMC in a total amount of $40,890,837.35: (a) the sum of $40,679,565.63 as the amount owed for Defendants' failure to repurchase the Early Payment Default Loans and its failure to forward loan pay-offs as of May 12, 2008; (b) interest from May 12, 2008 to May 31, 2008 of $149,686.56; and (c) $61,585.16 in PPP. Kaiserman Affidavit at ¶27.

### D.   DLJMC's and CSFBMC's Claim For Indemnification

48. Courts will enforce contractual indemnification provisions to permit one party to a contract to recover costs and legal fees from the other party in litigation between them, if the right to such costs and fees is "unmistakably clear from the language of the promise," Hooper Associates, Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 548 N.E.2d 903, 549 N.Y.S.2d 365 (1989), or "manifest from the surrounding facts

and circumstances or purpose of the agreement" <u>Breed, Abbott & Morgan v. Hulko</u>, 139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988).

49. Here, the parties' intention that DLJMC and CSFBMC would be indemnified for attorneys' fees in suits between the parties is explicitly stated. Purchase Agreement §8.01; MRA §16(f)(i).

36. Based on the foregoing, and as set forth in the Pinel Declaration, DLJMC and CSFBMC are entitled to recover $17,450.00 for professional services rendered by FBB and $2,744.81 in costs, amounting to $20,194.81. Defendants should be jointly and severally liable for these fees and costs.

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that DLJMC and CSFBMC are entitled to damages as set forth herein.

Dated: Allentown, Pennsylvania
May 15, 2008

                                            Flamm, Boroff & Bacine, P.C.

By: _____
Robert A. Pinel, Esquire
4905 W. Tilghman St., Suite 310
Allentown, PA  18104
(610)336-6800

*Attorneys for Plaintiff*
*DLJ Mortgage Capital, Inc. and*
*Credit Suisse First Boston Mortgage*
*Capital, LLC.*