UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC. and CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ACT LENDING CORPORATION d/b/a AMERICAN CAPITAL MORTGAGE SERVICES, AMERICAN CAPITAL TRUST, and NELSON HAWS,<br><br>                    Defendants. | Case No. 07-CV-10318 (JGK) |

## AFFIDAVIT OF BRUCE S. KAISERMAN IN SUPPORT OF PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

STATE OF NEW YORK    )
                                        ) ss.:
COUNTY OF NEW YORK )

BRUCE S. KAISERMAN, being duly sworn, deposes and says:

1.      I am a Vice President of DLJ Mortgage Capital, Inc. (hereinafter "DLJMC") and of Credit Suisse First Boston Mortgage Capital, LLC ("CSFBMC") and have knowledge of the facts and circumstances surrounding this action. I submit this affidavit pursuant to Magistrate Judge Theodore H. Katz's April 16, 2008 Order concerning the damages to be awarded based on the default of defendants ACT Lending Corporation ("ACT Lending") and American Capital Trust ("ACT Capital") in the above-captioned matter.   (Defendants ACT Lending and ACT Capital shall be jointly referred to as "Defendants".)

2.      Plaintiff DLJMC is a corporation organized and existing under the laws of the state of Delaware. DLJMC is a purchaser of mortgage loans and maintains its principal place of business in New York, New York.

3.      Plaintiff CSFBMC is a Delaware Limited Liability Company qualified to do business in the State of New York.  Its principal place of business is at 11 Madison Avenue, New York City, New York County, State of New York.

4.      Defendant ACT Lending is a Florida corporation doing business in the State of New York.  Its principal place of business is 481 Sawgrass Corporate Parkway, Sunrise, Florida 33325.

5.      Defendant ACT Capital is a Florida company doing business in the State of New York.  Its principal place of business is 8330 State Road 84, Davie, Florida 33324.

### The Loan Purchase Agreements

**A.      CSFBMC – ACT Lending Agreement**

6.      On or about March 24, 2005, CSFBMC and Defendant ACT Lending entered into a Master Repurchase Agreement (the "Original MRA").  (A copy of the Original MRA is attached to the Amended Complaint as Exhibit A.)  There have been eight amendments to the Original MRA, most recently on August 30, 2006.  (Copies of the Amendments are attached to the Amended Complaint as Exhibit B.  The Original MRA and its amendments shall collectively be referred to as the "MRA")

7.      Under the terms of the MRA, Plaintiff CSFBMC agreed to purchase certain mortgage loans from Defendant ACT Lending.  Defendant ACT Lending agreed to

repurchase these mortgage loans from Plaintiff CSFBMC "at a date certain or on demand." MRA at §4(a).

8.    Specifically, the MRA provides: "Seller shall repurchase the related Purchase Money Mortgage Loans from Buyer on each related Repurchase Date. Such obligation to repurchase exists without regard to any prior or intervening liquidation or foreclosure with respect to any Purchased Mortgage Loan.... " MRA at §4a.

9.    Failure to repurchase the loans creates an act of default. An "Event of Default" is defined in several ways under the MRA, including the "[f]ailure of Seller to (i) make any payment of ... [a] Repurchase Price or any other sum which has become due ... whether by acceleration or otherwise, under the terms of this Agreement ...." MRA at §15(a)(i).

10.    In addition to the standard remedies for breach of its agreements for losses under the MRA, *see* MRA at §16(f)(ii) and (iii) , Seller shall also be liable to Buyer for "all reasonable legal or other expenses... including, without limitation, the reasonable fees and expenses of counsel ... incurred in connection with or as result of an Event of Default...." MRA at §16(f)(i).

11.    The MRA also provides for a post-default rate of interest on loans that Defendant ACT Lending fails to repurchase as required. MRA at §16(g). The "Post Default Rate" is the "Pricing Rate" plus 3%. MRA at §2. The "Pricing Rate" means LIBOR plus 2.00%. *See* Exhibit B, Amended complaint, Amendment No. 7 to MRA, dated May 30, 2006 at §2.1(b) (Defining - "LIBOR" and "PRICING RATE", section (h). Thus, upon the failure to repurchase loans, Defendant ACT Lending is liable for a post-default rate of interest of LIBOR plus 5.00%.

12.    Defendant ACT Lending failed and refused to meet its obligations under the MRA by failing to repurchase certain loans by failing to tender the Repurchase Price by the Repurchase Date of February 1, 2008.  These loans, totaling $743,862.22 are identified in Exhibit A, which is attached hereto and incorporated herein by reference.

13.    Interest on these loans from the date of default through May 31, 2008 totals $95,486.76.  The interest calculations are set forth on Exhibit B, which is attached hereto and incorporated herein by reference.  This amount is calculated pursuant to the terms of the MRA.

14.    As a result, as of May 31, 2008, Defendant ACT Lending owes Plaintiff CSFBMC an amount totaling $839,348.98 for its failure to repurchase the loans identified in Exhibit A.

## B.    DLJMC – ACT Lending/American Capital Trust Agreement

15.    On or about January 1, 2002, Plaintiff DLJMC entered into a Purchase, Warranties and Interim Servicing Agreement with Defendant ACT Capital (the "Original Purchase Agreement").  (A copy is attached to the Amended Complaint as Exhibit D.)

16.    On or about March 1, 2005, both Defendants ACT entered into an Amended and Restated Seller's Purchase, Warranties and Interim Servicing Agreement" (the "Amended Purchase Agreement").  (A copy of the Amended Purchase Agreement is attached to the Amended Complaint as Exhibit E.)

17.    Under the terms of the Amended Purchase Agreement, Defendant ACT Lending acknowledged the existence of Original Purchase Agreement and by executing the Amended Purchase Agreement became a responsible party under both agreements, as was Defendant ACT Capital.

18.     Further, there is a synchronicity of identify between the Defendants. Act Capital signed the Amended Purchase Agreement, even though ACT Lending is identified as the "Seller". Defendant ACT Lending subsequently acknowledged its agreement and obligations under the Purchase Agreement by executing a July 1, 2005 letter Agreement (the "Letter Agreement"), amending the Original and Amended Purchase Agreements. (A copy of the Letter Agreement is attached hereto as Exhibit C.) (The Original Purchase Agreement, the Amended Purchase Agreement and the Letter Agreement shall be collectively referred to as the "Purchase Agreement.)

19.     Under the terms of the Purchase Agreement, Plaintiff DLJMC agreed to purchase certain mortgage loans from Defendants; Defendants would originate and sell mortgage loans to DLJMC. Defendants sold millions in loans to DLJMC. Additionally, in connection with these loans, Defendants reached out to DLJMC by e-mail, facsimile, and telephone. Further, as a loan servicer, Defendants forwarded all funds received by it on account of DLJMC to DLJMC in New York.

20.     Pursuant to Section 3.05 of the Purchase Agreement, Defendants agreed to repurchase from DLJMC certain mortgage loans as to which there occurred payment defaults after the Closing Date (as defined in the Purchase Agreement) for such mortgage loans (the "Early Payment Default Loans"). Section 3.05 of the Purchase Agreement specifically provides as follows:

> If (a) a Mortgagor is thirty (30) days or more delinquent with respect to any of the first three (3) Monthly Payments due to [DLJMC] on the related Mortgage Loan immediately following the applicable Closing Date . . . [Defendants], at [DLJMC's] option, shall promptly repurchase such Mortgage Loan from [DLJMC] within five (5) Business Days' of receipt of written notice from [DLJMC], in accordance with the

procedures set forth in Section 3.03 hereof, however, any such repurchase shall be made at the Repurchase Price.

21.    Thus, the Purchase Agreement expressly and unambiguously confers upon DLJMC the right to cause Defendants to repurchase, and, imposes on Defendants the obligation to repurchase, any Early Payment Default Loans as to which DLJMC requests repurchase.

22.    Certain of the mortgage loans that DLJMC purchased from Defendants pursuant to the Purchase Agreement were thirty days or more delinquent within three months after the Closing Date.

23.    Accordingly DLJMC requested that Defendants repurchase these Early Payment Default Loans pursuant to Section 3.05 of the Purchase Agreement. (Attached hereto as Exhibit D is a true and correct list of the Early Payment Default Loans that DLJMC requested that Defendants repurchase.)

24.    Under the Purchase Agreement, Defendants also agreed to provide "Purchase Price Protection" ("PPP") (commonly referred to as "Premium Recapture") to Plaintiff DLJMC if the purchased mortgage loans paid-off in full within a certain time after Plaintiff DLJMC purchased the mortgage loans from Defendants ACT Capital and ACT Lending.  Section 3.06 of the Purchase Agreement.

25.    DLJ gave Defendants notice that they must pay PPP for certain of the mortgage loans.  (A list of the PPP payments required to be made under the Purchase Agreement is attached as Exhibit E.)

25.    To date, Defendants have also refused and failed to repurchase the Early Payment Default Loans from DLJMC notwithstanding Defendants' express and unambiguous obligation to do so pursuant to the terms of the Purchase Agreement.

26.    To date, Defendants have also refused and failed to pay PPP to DLJMC notwithstanding Defendants' express and unambiguous obligation to do so pursuant to the terms of the Purchase Agreement.

27.    The total amount due from Defendants to DLJMC under the Purchase Agreement as of May 31, 2008 is $40,890,837.35 (a) the sum of $40,679,565.63 as the amount owed for Defendants' failure to repurchase the Early Payment Default Loans and its failure to forward loan pay-offs as of May 12, 2008; (b) interest from May 12, 2008 to May 31, 2008 of $149,686.56; and (c) $61,585.16 in PPP.

Dated: New York, New York

_____              _Bruce S. Kaiserman_
                                     BRUCE S. KAISERMAN

Sworn to before me this
_12th_ day of _May_, 2008

_____
Notary Public

ARTHUR A. LOSKOVE
Notary Public, State of New York
No. 02LO6177589
Qualified in New York County
Certificate Filed in New York County
Commission Expires November 13, 2011

# EXHIBIT   A

# Funding Allocation Report

**Lender: CSFB - CSFB**
**Customer: ACT - ACT Lending Corporation d/b/a American Capital Mortgage Serv**
**Account: ACT AGED SEC - Aged Seconds**

**Funding Type: Payments   Method: Wire   DDA Account: 30597629**

| Loan ID | Name | Funding ID | Collateral Value | Principal Amt | Funding Amt | Surplus / (Deficit) | Eff. Date | Tran. Date |
|---|---|---|---|---|---|---|---|---|
| CTPP161854 | GEORGE | LOSS RESERVE PER GT | 0.00 | 5,027.24 | 5,027.24 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP164160 | ALVAREZ | LOSS RESERVE PER GT | 0.00 | 7,160.71 | 7,160.71 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP165410 | ORTIZ | LOSS RESERVE PER GT | 0.00 | 78,596.00 | 78,596.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP159320 | BEATTY | LOSS RESERVE PER GT | 0.00 | 73,849.37 | 73,849.37 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP161274 | FILHO | LOSS RESERVE PER GT | 0.00 | 69,169.00 | 69,169.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP159978 | FUENTES | LOSS RESERVE PER GT | 0.00 | 62,401.50 | 62,401.50 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP159816 | HIGGINS | LOSS RESERVE PER GT | 0.00 | 59,985.00 | 59,985.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP157743 | MUNIZ | LOSS RESERVE PER GT | 0.00 | 53,096.40 | 53,096.40 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP148702 | MONDESIR | LOSS RESERVE PER GT | 0.00 | 78,100.00 | 78,100.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP152764 | MARBLEY | LOSS RESERVE PER GT | 0.00 | 64,680.00 | 64,680.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP152669 | HARRIOTT | LOSS RESERVE PER GT | 0.00 | 125,550.00 | 125,550.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP161854 | ELLIOTT | LOSS RESERVE PER GT | 0.00 | 66,248.00 | 66,248.00 | 0.00 | 09/24/2007 | 09/24/2007 |
| CTPP164160 | ALVAREZ | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP165410 | ORTIZ | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP159320 | BEATTY | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP161274 | FILHO | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP159978 | FUENTES | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP159816 | HIGGINS | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP157743 | MUNIZ | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP148702 | MONDESIR | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP152764 | MARBLEY | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| CTPP152669 | HARRIOTT | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |
| | ELLIOTT | 9/21 | 0.00 | 0.00 | 0.00 | 0.00 | 09/21/2007 | 09/21/2007 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total: | 24 Loans | 0.00 | 743,862.22 | 743,862.22 | 0.00 | | |
| Account Total: | 24 Loans | 0.00 | 743,862.22 | 743,862.22 | 0 | | |
| Customer Total: | 24 Loans | 0.00 | 743,862.22 | 743,862.22 | 0 | | |
| Lender Total: | 24 Loans | 0.00 | 743,862.22 | 743,862.22 | 0 | | |

Run By: Ichin
Usergroup: Funding / Payoff Group
Company: CSFB

1

4:30:48PM
05/07/2008
M227.rpt

# EXHIBIT   B

## EXHIBIT B – INTEREST CALCULATION

| Month/Year | Avg. Daily LIBOR | Effective Daily Rate (LIBOR + 5.00%)/12 | Monthly Interest (EDR x $743,862.22) |
|---|---|---|---|
| 2-07 | 5.29 | .8575 | $6,378.62 |
| 3-07 | 5.33 | .86083 | $6,403.39 |
| 4-07 | 5.35 | .8625 | $6,415.81 |
| 5-07 | 5.35 | .8625 | $6,415.81 |
| 6-07 | 5.32 | .86 | $6,397.22 |
| 7-07 | 5.36 | .86333 | $6,421.98 |
| 8-07 | 5.37 | .86416 | $6,428.16 |
| 9-07 | 5.77 | .8975 | $6,676.16 |
| 10-07 | 5.02 | .835 | $6,211.25 |
| 11-07 | 4.64 | .80333 | $5,975.67 |
| 12-07 | 4.70 | .80833 | $6,012.86 |
| 1-08 | 4.45 | .8125 | $6,043.88 |
| 2-08 | 3.15 | .67916 | $5,052.01 |
| 3-08 | 3.15 | .67916 | $5,052.01 |
| 4-08 | 3.03 | .66916 | $4,977.63 |
| 5-08 | 2.46 | .62166 | $4,624.29 |
| | | **Total** | $95,486.75 |

# EXHIBIT   C

DLJ MORTGAGE CAPITAL, INC.
Eleven Madison Avenue
4th Floor
New York, New York 10010

July 1, 2005

Re:    That certain purchase agreement (the "Purchase Agreement"), dated as of
March 1, 2005 by and between DLJ Mortgage Capital, Inc. (the
"Purchaser") and ACT Lending Corporation (the "Seller") pertaining to
the purchase, sale and interim servicing of residential mortgage loans
(the "Mortgage Loans"), as the same, may have been amended from time
to time and is now in effect.

Ladies and Gentlemen:

In connection with the purchase of Mortgage Loans from time to time, and in
consideration of the mutual agreements hereinafter set forth, and for other good and valuable
consideration, the receipt and sufficiency of which is hereby acknowledged, the Purchaser and the
Seller hereby agree as follows:

The Purchaser and the Seller have entered into the Purchase Agreement for the
purchase and sale of Mortgage Loans. The Purchaser and the Seller now wish to amend the terms
and conditions of such Purchase Agreement, as more specifically set forth below. Capitalized
terms used herein without definition herein have the respective meanings assigned in or pursuant
to the Purchase Agreement.

With respect to each Mortgage Loan originated by the Seller and identified by
the Purchaser as a sub prime mortgage loan (each a "Sub Prime Mortgage Loan"), Sections 3.05
and 3.06 of the Purchase Agreement are each hereby deleted in their entirety, and replaced with
the following:

1. "Section 3.05  Repurchase of Mortgage Loans With Early Payment Defaults.
If (a) a Mortgagor is thirty (30) days or more delinquent with respect to any of the first three (3)
Monthly Payments due to the Purchaser on the related Sub Prime Mortgage Loan immediately
following the applicable Closing Date or (b) a Sub Prime Mortgage Loan is in bankruptcy or
litigation within the first three (3) months immediately following the applicable Closing Date, the
Seller, at the Purchaser's option, shall promptly repurchase such Sub Prime Mortgage Loan from
the Purchaser within five (5) Business Days' of receipt of written notice from the Purchaser, in
accordance with the procedures set forth in Section 3.03 hereof, however, any such repurchase
shall be made at the Repurchase Price."

2. "Section 3.06  Purchase Price Protection.  For Sub Prime Mortgage Loans that
are prepaid in full during the first year after the related Closing Date, the Seller shall reimburse
the Purchaser an amount equal to (a) the product of (i) the total premium paid by the Purchaser in
respect of the related Sub Prime Mortgage Loan (Purchase Price less Stated Principal Balance as
of the related Closing Date) times (ii) a fraction, the numerator of which is equal to the number of

months remaining from the date of prepayment in full until one year from the related Closing Date and the denominator of which is 12 minus (b) the amount of any Prepayment Penalty to the extent such Prepayment Penalty is (i) legally enforceable and (ii) collected and remitted to the Purchaser, in each case, with respect to such Sub Prime Mortgage Loan, within thirty (30) days of such prepayment in full. Upon any assignment of a Sub Prime Mortgage Loan and/or this Agreement, the Purchaser may at its option retain its rights under this Section 3.06 notwithstanding such assignment."

3. Applicability. The provisions hereof will only apply to Sub Prime Mortgage Loans purchased from the Seller on or after the date hereof.

4. Miscellaneous. The parties acknowledge and agree that subject to the provisions of this letter, the provisions of the Purchase Agreement shall remain unmodified and in full force and effect and, furthermore, that the execution of this letter shall not operate as a modification or waiver of any of either party's rights, powers or privileges under the Purchase Agreement, except as expressly set forth herein. This letter sets forth the entire understanding between the parties regarding the matters set forth herein. This letter shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns. This letter may be executed in any number of counterparts each of which shall constitute one and the same instrument, and either party hereto may execute this letter by signing any such counterpart.

This letter shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York except to the extent preempted by Federal law.

Very truly yours,

DLJ MORTGAGE CAPITAL, INC.

By: _____
Name: _____
Title: _____

Accepted and Agreed:

ACT LENDING CORPORATION

By: _____
Name: _NELSON ST HAWS_____
Title: _PRESIDENT_____

[Signature page to nonprime LBL amendment]

# EXHIBIT   D

Purchaser: DLJ Mortgage Capital, Inc.
C/O Credit Suisse Securities (USA) LLC
Eleven Madison Avenue - 4th Floor
New York, NY 10010-3629

ACT Lending Corporation

Issue Date: N/A - Actual
Settlement Date: May 12, 2008

| DLJ/MC Loan # | Servicer Loan # | Seller Loan # | Name | Settlement Date | Loan Position | Servicer | As of Date | Balance | Next Due Date | Note Rate | Daily Interest | Days Interest Repurchased | Interest Total Amount | Repurchase Price | Repurchase % Amount | Total Due | Reason For Repurchase | Date Requested |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| Loan # | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 120028808 | ACTPP155484 | BEATTY | 10/1/08 | 1 | WELLS | 04/2008 | $233,283.89 | 12/01/08 | 9.3000 | $41.90 | 551 | $33,774.60 | 105.5000 | $8,135.90 | $274,100.68 REO | 90 Days Late for Dec | 02/2007 |
| 120028929 | ACTPP164888 | BENEDETTI | 10/1/08 | 1 | FAIRBK | 04/2008 | $262,435.00 | 11/01/08 | 6.3500 | $47.79 | 551 | $27,795.54 | 102.5176 | $8,096.03 | $238,351.07 REO | 90 Days Late for Nov, B | 01/2007 |
| 120029753 | ACTPP164888 | SEYMOUR | 11/1/08 | 1 | FAIRBK | 02/2008 | $75,111.63 | 12/01/08 | 7.0000 | $115.65 | 551 | $34,622.31 | 101.5497 | $1,761.00 | $84,668.97 REO | 90 Days Late for Nov, A | 01/2007 |
| 10033719 | ACTPP156021 | SHEGOGUE | 10/1/08 | 1 | FAIRBK | 02/2008 | $112,000.00 | 12/01/07 | 0.0000 | $0.00 | 621 | $0.00 | 100.0000 | $0.00 Make Whole | 60 Days Late for Jan, A | 01/2007 |
| 10029743 | ACTPP163471 | FARRAR | 10/1/08 | 1 | FAIRBK | 04/2008 | $213,575.63 | 01/01/07 | 0.0000 | $0.00 | 621 | $0.00 | 101.1547 | $0.00 Make Whole | 60 Days Late for Jan, A | 01/2007 |
| 10029173 | ACTPP163470 | BRYANT | 10/1/08 | 1 | FAIRBK | 04/2008 | $90,784.12 | 02/01/07 | 8.7500 | $120.66 | 441 | $256,356.44 | 100.0681 | $677,398.01 Foreclosure | 30 days late for Dec A | 01/2007 |
| 10029147 | ACTPP155486 | BLAKE | 10/1/08 | 1 | FAIRBK | 04/2008 | $314.78 | 02/01/07 | 0.0000 | $314.78 | 441 | $6,411.63 | 103.0681 | $3,088.42 Foreclosure | 30 days late for Feb/ue | 02/2007 |
| 10029491 | ACTPP164125 | HAYES | 10/1/08 | 1 | FAIRBK | 04/2008 | $271,104.78 | 02/01/07 | 8.6250 | $98.39 | 441 | $32,592.34 | 100.0681 | $39,608.67 Foreclosure | 30 days late for Feb, B | 02/2007 |
| 10029158 | ACTPP164125 | MEJIA | 10/1/08 | 1 | FAIRBK | 04/2008 | $271,146.83 | 03/01/07 | $71.78 | 441 | $8,813.83 | 100.5000 | $15,896.87 Foreclosure | 30 Days Late for Nov | 02/2007 |
| 10028258 | 157168 | SUMNER | 10/1/08 | 1 | FAIRBK | 04/2008 | $210,058.73 | 02/01/07 | 0.0000 | $0.00 | 441 | $294,842.28 | 100.5000 | $318,400.90 RED | 30 Days Late for Nov | 02/2007 |
| 120029331 | 157168 | RODRIGUES | 10/1/08 | 1 | FAIRBK | 02/2008 | $117,125.53 | 02/01/07 | 0.0000 | $0.00 | 441 | $0.00 | 100.5000 | $319,210.49 RED | 30 Days Late for Nov A | 02/2007 |
| 10028356 | 180004 | HAYMON | 10/27/08 | 1 | FAIRBK | 04/2008 | $98,562.72 | 11/01/06 | 0.2500 | $18.85 | 481 | $0.00 | 100.0000 | $210,059.73 Make Whole | 30 Days Late for Dec, A | 02/2007 |
| 10071140 | | | 10/27/08 | 1 | FAIRBK | 04/2008 | $113,546.00 | 05/01/07 | 9.1350 | $26.85 | 371 | $11,521.20 | 102.5023 | $11,155.53 Make Whole | 30 Days Late for Dec, J | 02/2007 |
| | | | | | | | | | | $25.83 | | $9,067.41 | 102.8028 | $3,306.36 Foreclosure | 60 Days Late for Feb | 04/2007 |

The following are DLJ Mortgage Capital, Inc. wiring instructions:

Citibank NYC
ABA : 021-000-089
A/C # S49495308
A/C: DLJ Mortgage Capital, Inc.
Reference: ACT1 Lending Corporation
Attn: Chris Tuffner

TOTAL DUE DLJ MORTGAGE CAPITAL, INC.: $40,171,564.63

In addition to the foregoing, please note that you, The Purchaser shall be responsible for reimbursing the loan servicer for
relationship accounts and escrow amounts related to the loans at the time of the applicable transfer.

Per Diem (for repurchase after settlement date): $7,478.34

# EXHIBIT   E

DLJ Mortgage Capital, Inc.
c/o Credit Suisse Securities (USA) LLC
Eleven Madison Avenue - 4th Floor
New York, NY 10010-3629

Seller:
Seller Id

ACT Lending Corporation
AA

| Seller Id | DLJ# | Invoice # | Servicer | Name | Address | City | State | Lien | Prepay Penalty | Date Purchased | Date Paid in Full | Balance Amount | Purchase Price | Months Remaining | Premium Paid by Plan | Premium Due DLMC | Prepay Penalty Collected | Premium Owed DLMC | First Sch't Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | FARBK | MACKROY | 11220 CORAL KEY DRIVE | BOCA RATON | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | MARTINEZ | 38 SOUTH LINCOLN AVENUE | BEVERLY HILLS | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | SANCHEZ | 611 OXFORD ROAD | LONGWOOD | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | DELVECCHIA | 6413 SEMINOLE STREET | | PA | 2 | N | | | | | | | | | | |
| | | | FARBK | MORGAN | 700 W 9TH AVENUE | PHILADELPHIA | PA | 2 | N | | | | | | | | | | |
| | | | WILSHR | GUZMAN | 15 CORDON STREET | TAMARAC | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | JOLLY | 74 BACON STREET | CLIFFWOOD | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | BEAVER | 1145 HIGHLANDS WAY | ORANGE | MA | 2 | N | | | | | | | | | | |
| | | | WELLS | HOYLE | 6391 THOROUGHBRED LN | BOYNTON BEACH | FL | 1 | N | | | | | | | | | | |
| | | | WELLS | CARLUCCI | 406 86TH ST | SOUTHWEST RANCHES | FL | 1 | N | | | | | | | | | | |
| | | | FARBK | RIM | 1211 13TH STREET NW #207 | WASHINGTON | DC | 1 | N | | | | | | | | | | |
| | | | WELLS | RAMOS | 4569 ADIRONDACK RD | WEST NEW YORK | NJ | 1 | N | | | | | | | | | | |
| | | | FARBK | LUONG | 781 SEAWALL ROAD | SUITLAND | MD | 2 | N | | | | | | | | | | |
| | | | NELNET | SALAZAR | 2530 31ST STREET NW #2 | Baltimore | MD | 2 | N | | | | | | | | | | |
| | | | FARBK | ELLIOTT | 1628 6W ROAD AVENUE | WINTER HAVEN | FL | 2 | N | | | | | | | | | | |
| | | | WELLS | CATANIA | 4301 NW 107TH AVENUE | VILLAGE OF PALMETTO | FL | 1 | N | | | | | | | | | | |
| | | | FARBK | KELLY | 698 KW 135TH AVENUE | PASSAIC | NJ | 2 | N | | | | | | | | | | |
| | | | FARBK | MARCHIORA | 1 M VIA CATALUNA | CORAL SPRINGS | FL | 2 | N | | | | | | | | | | |
| | | | FARBK | PAWLIK | 36-39 SUMERLAND DRIVE | PEMBROKE PINES | FL | 1 | N | | | | | | | | | | |
| | | | KOHLS | PASHA | 601 ROSALIA STREET SE | FAIR LAWN | NJ | 2 | N | | | | | | | | | | |
| | | | FARBK | | 108 RICHMOND STREET | ATLANTA | GA | 2 | N | | | | | | | | | | |
| | | | FARBK | | 3024 14TH AVE | BROOKLYN | NY | 2 | N | | | | | | | | | | |

To remit payment by check the following to DLMC's listing instructions:

Citibank NYC
ABA: 021-000-089
A/C #
Reference: DLJ Mortgage Capital Inc.
Attn: Olivia Ramos / Tel 212-325-7624

To remit payment by check the following to DLMC's mailing address:

DLJ Mortgage Capital Inc.
c/o Credit Suisse LLC
One Madison Avenue - 2nd Floor
New York, NY 10010
Attention: Joanna Lombardo